**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JOAN L. HABIB,**

      **Plaintiff,**

**v.**                                                                  **Case No. 8:09-cv-82-T-17AEP**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments.[1] Because the decision of the Commissioner of Social Security fails to properly evaluate Plaintiff's ability to perform her past relevant work in view of her impairments, and fails to make any findings as to the effects of Plaintiff's prescribed medications upon her ability to work, the undersigned recommends that the decision be reversed and the matter remanded for further consideration.

**I.**

Plaintiff was thirty-seven years of age at the time of her administrative hearing on April 14, 2008. (Tr. 480.) She stands 5' 4" tall and weighs approximately 240 pounds. (Tr. 167.)

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this Court dated August 12, 2009. (Dkt. No. 17.) *See also* Local Rule 6.01(c)(21).

Plaintiff has a high school education and is able to communicate in English. (Tr. 481.) She reported her past work experience in the fields of data entry and product assembly. (Tr. 481-83.) On May 13, 2005, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging disability beginning December 31, 1999, due to bone density loss, an inoperable brain lesion, asthma, hives, irritable bowel syndrome, foot problems, anxiety, depression, joint and facial pain, hypoglycemia, carpal tunnel syndrome, hormone problems, and obesity. (Tr. 10, 57.) Plaintiff's claims were denied originally and upon reconsideration. (Tr. 10.) Thereafter Plaintiff filed a timely written request for a hearing before an Administrative Law Judge ("ALJ") and amended her alleged onset date of disability to December 1, 2003.

At the administrative hearing held before the ALJ on April 14, 2008, Plaintiff was represented by counsel and testified on her own behalf. (Tr. 480-95.) Also before the ALJ were medical records outlining Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. The ALJ found that Plaintiff had severe impairments consisting of obesity, asthma, internal hemorrhoids, endometriosis, hives, migraines, back pain, hypertension, right wrist pain, seizure (single episode), ischemic colitis, and an adjustment disorder. (Tr. 13 Finding 3.) The ALJ also found the Plaintiff had multiple 'minor' physical problems consisting of mild depression associated with anxiety, chest pain, abdominal pain, back pain, shoulder pain, arm pain, leg pain, head pain, feet pain, and obesity. (*Id.*) Based upon his review of the record, the ALJ concluded that Plaintiff had the residual functional capacity to perform medium work, and could perform her past relevant work as a data

entry clerk, cashier, or assembler. (Tr. 18-20.) Therefore, the ALJ found Plaintiff not disabled. (Tr. 21.)

The Appeals Council denied Plaintiff's request for review (Tr. 2) and Plaintiff subsequently filed the instant action (Dkt. No. 1).

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id*. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law and demonstrate that he has

done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[2] Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**III.**

Plaintiff raises numerous issues in her appeal. Specifically, Plaintiff states that the Commissioner erred:

(1) by failing to apply the proper standard in determining what constitutes a severe impairment;

(2) by failing to properly evaluate the effect of obesity in determining disability in accordance with Social Security Ruling 02-1p;

(3) in finding that Plaintiff had a residual functional capacity to perform medium work despite Plaintiff's impairments;

(4) by failing to articulate adequate reasons for finding Plaintiff's subjective complaints not credible; and

(5) by failing to consider the effect of medication on Plaintiff's ability to function. (Dkt. No. 14 pp. 1-2, 16.)

For the reasons explained below, the Court finds that the ALJ erred in at least two respects, and reversal and remand is warranted.

**A. The ALJ Erred By Not Making Findings Regarding the Physical and Mental Demands of Plaintiff's Past Work**.

Plaintiff contends that the ALJ failed to properly assess the physical and mental requirements and demands of the Plaintiff's past relevant work in light of her impairments. (Dkt. No. 14 pp. 13.) Under SSR 82-62, in finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain the following specific findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental

5

demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her pas job or occupation. SSR 82-62; *see also* 20 C.F.R. §§ 404.1560, 404.1565.

The ALJ found that the Plaintiff had a residual functional capacity ("RFC") to perform medium work. (Tr. 18.) In finding Plaintiff could perform her past relevant work, the ALJ then made the following findings of fact:

> The claimant is capable of performing past relevant work as a data entry clerk, cashier II and assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity . . . In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed.

(Tr. 20.) The Court finds that the ALJ did not properly evaluate the physical and mental demands of Plaintiff's past work in arriving at his conclusion that the Plaintiff would be able to perform it as actually performed. Indeed, the decision lacks any analysis at all with respect to the demands of Plaintiff's past work. The Court notes that the ALJ did inquire into the physical demands of Plaintiff's past work during the oral hearing, (*see* Tr. 481-83), but the ALJ did not comment on the physical demands of those jobs in his decision. Moreover, there was no inquiry into the mental demands of Plaintiff's prior work. Given that Plaintiff alleged numerous mental impairments as well as the alleged side effects of her numerous medications, the ALJ should have made a finding of fact as to the mental demands of Plaintiff's past work. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 n. 3 (11th Cir. 1990) ("To support a conclusion that [Plaintiff] is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments"). Although the ALJ may still find that Plaintiff can

6

perform her past relevant work, the Court cannot speculate as to that because the record has not been fully developed. *See Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) ("the Secretary has an obligation to develop a full and fair record"). Therefore the case must be remanded for the Commissioner to articulate specific findings as to the mental and physical demands of Plaintiff's past work in light of the claimed impairments.

### B. The ALJ Erred By Not Evaluating the Side Effects of Plaintiff's Medications.

Plaintiff also argues that the ALJ failed to properly assess the effect of medication on Plaintiff's ability to function. (Dkt. No. 14 pp. 16.) During the oral hearing Plaintiff testified that the medications she took caused side effects such as sleepiness, dry mouth, pain, the shakes, and made it difficult for her to concentrate or focus. (Tr. 487.) The record also reflects Plaintiff's subjective complaints regarding the side effects of her medications. (Tr. 92, 93, 120, 133.) The ALJ's decision makes no mention of the side effects that Plaintiff's medications cause. The Commissioner argues that the medical records undermine Plaintiff's testimony because they do not indicate she complained about the side effects of her medications. Whether Plaintiff's claims are credible is not for this Court to determine. It is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).

The Commissioner also asserts that the ALJ is not required to address every allegation on an individual basis, and that in any event the error was harmless. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). However, it is conceivable that the side effects of

7

medication could render a claimant disabled or at least contribute to a disability. *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). Moreover "the administrative law judge should have made a finding on [Plaintiff's] claim regarding side effects, making it possible for a reviewing tribunal to know that the claim was not entirely ignored." *Id.* (*quoting Figueroa v. Secretary of HEW*, 585 F.2d 551, 554 (1st Cir. 1978). Therefore, the Court finds that the ALJ erred by failing to develop the record fully because he neither elicited testimony nor made any findings regarding the effect of Plaintiff's prescribed medications upon her ability to work. *See id.*; *McDevitt v. Comm'r of Soc. Sec.*, 241 Fed. Appx. 615, 619 (11th Cir. 2007); 20 C.F.R. §§ 404.1529, 416.929.

### C. The ALJ Properly Found that Plaintiff's Mental Impairments were Non-Severe.

The Plaintiff also disputes the ALJ's determination that Plaintiff's allegations of a "severe" depressive disorder were not supported by the objective medical evidence and caused no more than a "mild" limitation on her ability to function. (*See* Dkt. No. 14 pp. 4; Tr. 15-16.) Plaintiff claims that the ALJ failed to analyze her mental illness under the Eleventh Circuit's pain standard. Plaintiff also points to three sources of evidence in the record which demonstrate why Plaintiff's mental impairment should have been found to be severe: (1) the diagnoses of various mental illnesses (depression, anxiety, bipolar disorder, and an adjustment disorder) by various medical professionals; (2) the observation of bald spots consistent with Plaintiff's claims of pulling her hair out when stressed; and (3) a Global Assessment of Functioning ("GAF") of 52. (Dkt. No. 14 pp. 5-6.)

8

The ALJ found that the "medically determinable mental impairment of an adjustment disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (Tr. 16.) The ALJ considered four broad functional areas, known as "paragraph B" criteria in making this determination. *See* Section 12.00C of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1. Specifically, the ALJ considered Plaintiff's (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. (Tr. 16-17.) The ALJ found that Plaintiff had mild limitations with respect to (1), (2), and (3), and had no episodes of decompensation. (Tr. 17.) As explained below in detail, the ALJ cited specific examples of Plaintiff's conduct to support his findings. Because Plaintiff's medically determinable mental impairment caused no more than "mild" limitations the ALJ found the condition to be nonsevere. (*Id.*)

To be sure, the threshold for a finding of severity at step two of the sequential analysis is quite low. *McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). An impairment is not severe if it does not significantly limit an individual's physical or mental ability to perform basic work related functions. 20 C.F.R. § 416.921(a). Basic work activities related to mental impairments include: (1) understanding, carrying out, and remembering simple instructions; (2) use of judgment; (3) responding appropriately to

9

supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting.  20 C.F.R. § 416.921(b)(3)-(6).

In this case, the ALJ's reasons for finding that Plaintiff's mental impairments were not a severe impairment are supported by substantial evidence and are consistent with legal standards.  First, Plaintiff's argument that the alleged mental impairment is severe appears to be premised primarily on the fact that Plaintiff was diagnosed with various mental impairments and prescribed medication.  The Court is not persuaded that a diagnosis alone commands a finding that the impairment significantly limits an individual's mental ability to do basic work activities. Indeed, a diagnosis or a mere showing of "a deviation from purely medical standards of bodily perfection or normality" is insufficient; instead, the Plaintiff must show the effect of the impairment on her ability to work. *Wind v. Barnhart,* 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Here, there is some evidence in the record that Plaintiff's mental impairments could have affected her ability to perform basic work activities.  Plaintiff has described herself as withdrawn due to her depression, that she feels "like a blob," and does not want to leave the home. (Tr. 115, 119, 121, 313.)  Additionally, Plaintiff claims that she can only pay attention for 10-15 minutes and has difficulty following instructions.  (Tr. 117.)  At times Plaintiff has described herself as "zoned out," but those claims seem to be related to her alleged headaches and low blood sugar, rather than due to her mental impairments.  (*See* Tr. 135, 484.)  Moreover, it appears from the record that Plaintiff's depression merely affects her ability to socialize rather than her ability to engage in basic work activities.  (Tr. 121, 131, 134.)  Undoubtedly, the ability

to get along with others is one factor to consider; however, as described below, the ALJ found that Plaintiff's mental impairments only mildly affected her ability to socialize.

Despite the contentions of Plaintiff, there is substantial evidence to support the ALJ's finding that Plaintiff's mental impairments are nonsevere and only mildly affected her ability to perform basic work activities. In assessing the paragraph B criteria, the ALJ first noted that although Plaintiff claimed her fiancé Randy Edmiston performed all of the activities of daily living, he found her claim less than credible given her ability to lift, bend, stand, reach, or use her hands. (Tr. 17, 117.) The record confirms Plaintiff was able to perform some of her active daily activities such as household chores, the preparation of meals, and grocery shopping. (Tr. 113-15, 134, 138-39, 218.) The ALJ also found Plaintiff's social functioning to be mildly limited because the Plaintiff was able to go grocery shopping, got along with authority figures, was pleasant during her examinations, and interacted with her family on a regular basis. (Tr. 17.) The record also supports these findings. (Tr. 115, 116, 139, 140, 494.) Medical professionals described Plaintiff as "pleasant," "cooperative," and "cheerful" during her visits for treatment and examinations. (Tr. 146, 151, 155, 204.) Next, the ALJ found Plaintiff's concentration, persistence, and pace were only mildly limited. (Tr. 17.) The ALJ noted Plaintiff's fiancé reported that she could understand follow written instructions. (Tr. 17, 141.) The ALJ cited Dr. Appenfeldt's report which indicated Plaintiff's cognitive capabilities were intact and that her attention and concentration were adequate. (Tr. 355.) Additionally, the ALJ cited to ARNP McLean's report which indicated Plaintiff's thought processes were logical, goal-oriented and coherent. (Tr. 204.) Finally, the ALJ found there were no episodes of decompensation. (Tr. 17.)

In sum, the ALJ's determination that Plaintiff's mental impairment was mildly limiting supported his finding that the impairment was nonsevere.

The Court agrees with Plaintiff in that numerous medical professionals found Plaintiff to have some kind of mental impairment for which she was prescribed medication. However, the evaluations by these medical professionals does not compel a finding that Plaintiff's mental impairment is severe. Dr. Appenfeldt's examination on June 15, 2005, described Plaintiff's fund of knowledge as good, and found Plaintiff's judgment, recall, attention, and concentration as adequate, with no evidence of obsessions, compulsions, phobias, or guilt. (Tr. 355-56.) Similarly, an evaluation by Dr. Dow, on June 29, 2005, revealed that Plaintiff's mental disorder resulted in only mild functional limitations, and that she had adequate attention, concentration, and memory. (Tr. 16, 237.) ARNP McLean's report of November 7, 2006, found Plaintiff's attention and concentration were adequate, her insight and judgment were intact for safety, and that she had an adequate memory. (Tr. 204.) Her follow-up evaluation of January 23, 2007, also indicated logical, organized thought process, with no evidence of hallucinations, delusions, or paranoia, and a pleasant attitude. (Tr. 198.) Likewise, Dr. Patel's reports of February 16, 2006, and March 25, 2008, described Plaintiff as cheerful, with good concentration, memory, and attention. (Tr. 146, 151.) Finally, the ALJ's decision refers to Plaintiff's visit to Gastroenterology Saint Petersburg on April 18, 2007, where Plaintiff's judgment, insight, and memory were found to be intact, with no depression or anxiety noted. (Tr. 15, 189-90.)

The ALJ did not discuss the November 7, 2006, GAF score of 52 assessed by ARNP McLean. However, the Court agrees with the Commissioner in finding that the ALJ did not err in not evaluating this score. The GAF scale "[c]onsider[s] psychological, social, and

occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-TR) 34 (4th ed., text revision 2000). A rating of 51-60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

The Plaintiff's attempted reliance upon this single GAF score is unpersuasive for several reasons. First, as the Commissioner notes, a GAF score is of limited, if not questionable, value (Dkt. No. pp. 7-8). *See Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n. 5 (11th Cir. 2005) ("GAF scores have no direct correlation to the severity requirements of the mental disorders listing") (*citing* 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 200)). Consequently, ARNP McLean's GAF score of 52 merely reflects her observation of the Plaintiff on one day. Moreover, on that day there were other stressors that seemingly would lower Plaintiff's GAF scores, such as the stress over custody issues and the fact that her children had recently moved back in with her. (Tr. 202.) For these reasons, and because there are no other GAF scores during the relevant time frame, the single GAF score relied upon by the Plaintiff does not provide significant support for the Plaintiff's claim of a disabling mental impairment. Likewise, the fact that Plaintiff had visible signs of distress on that day (noticeable spots without hair), which was not cited in the ALJ's decision, does not provide sufficient grounds to compel a different conclusion than that reached by the ALJ.

Finally, the record also reflects that Plaintiff missed two scheduled appointments following her visit to ARNP McLean and her medication was discontinued. (Tr. 207.) Missing scheduled appointments undermines Plaintiff's allegations of disabling impairments. *See* 20

13

C.F.R. §§ 404.1529(c)(3)(v), (vi); 416.929(c)(3)(v), (vi); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

The ALJ, viewing the record as a whole, determined that Plaintiff's alleged mental impairment was not a severe impairment because the condition did not cause more than a minimal limitation on her ability to perform basic mental work activities. (Tr. 16.) The Court finds for the aforementioned reasons that this determination is supported by substantial evidence.

**D.  The ALJ's Evaluation of Plaintiff's Physical Impairments, Including that of Obesity, and His Reasons for Finding Plaintiff's Subjective Complaints Not Credible, Are Supported by Substantial Evidence.**

Plaintiff argues that the ALJ's evaluations of Plaintiff's headaches, chronic obstructive pulmonary disease (COPD), degenerative disc disease, and obesity were in err. When a claimant alleges disability through subjective complaints of pain or other symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the law judge discounts the plaintiff's testimony concerning subjective complaints, he must articulate explicit and adequate reasons for doing so. *Id.* "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983)).

The ALJ, while not specifically citing to Eleventh Circuit case law regarding the pain standard, properly applied the pain standard test in considering Plaintiff's subjective complaints

regarding her alleged mental and physical impairments, and his determination is supported by substantial evidence. (Tr. 18-20.) Specifically, the ALJ found that although Plaintiff indeed met the first prong of the pain standard test which requires evidence of the underlying medical conditions, the medical evidence did not "document a continuing impairment of incapacitating proportions, i.e., on which would produce pain of such intensity that the ordinary physical activity to perform basic work-related functions would impossible or contraindicated for a continuous period of 12 months or more." (Tr. 18.) Additionally, the clinical and laboratory findings did not support the alleged severity of pain as described by the Plaintiff. (*Id.*) In reaching this conclusion, the ALJ considered Plaintiff's subjective complaints, and adequately explained his reasons for discrediting those complaints.

The ALJ acknowledged that when statements concerning the intensity, persistence or functionally limiting effects of pain or other symptoms were not substantiated by objective medical evidence, he had a duty to make a finding on the credibility of Plaintiff's statements based on the entire case record. (Tr. 18-19.) In determining that Plaintiff was not fully credible in her allegations, the ALJ found that many of Plaintiff's complaints were not corroborated to the extent or severity complained of, during clinical exams by several of her treating physicians. (Tr. 19.)

Specifically, contrary to Plaintiff's allegations of disability, the objective medical evidence from Dr. Patel's exams of March 25, 2008, and February 16, 2006, showed (1) Plaintiff had a full range of motion in her upper and lower extremities; (2) Plaintiff had a normal gait, heel to shin, tandem walk, and a 5/5 hand grip score; and (3) her respiratory system was described as having a normal rate and was negative for wheezing, rales, or rhonchi. (Tr. 20, 147.) Dr. Patel's

15

MRI of the cervical spine revealed only minimal disc bulging at C3-4, C4-5, C5-6 and C6-7, with effacement of thecal sac and without spinal cord compression. (Tr. 158.) The rest was unremarkable. (*Id.*) Similarly, Dr. Patel's MRI of Plaintiff's brain revealed nothing remarkable. (Tr. 159.)

With respect to Dr. Harper-Nimock's evaluation in July 2005, although Plaintiff had difficulty in rising from the chair and needed help getting on and off the exam table, Plaintiff had a normal gait, with full rotation of movement except for a limited lumbar spine extension and lateral flexion of 10º. (Tr. 20, 219, 224.) Dr. Harper-Nimock noted that Plaintiff had mild to moderate limitations in the repetitive use of her hands and arms, but her exam also indicated that Plaintiff's hand and finger dexterity were intact, with a grip strength of 5/5. (Tr. 219, 220.) In another evaluation conducted by Dr. Appenfeldt in June 2005, Plaintiff's gait, stance, and ambulation were described as essentially unremarkable. (Tr. 355.)

The ALJ's decision further refers to Plaintiff's visits to Gastroenterology Saint Petersburg in 2008 and 2007, which also cast doubt on the severity of Plaintiff's allegations. Plaintiff's gait and station were described as normal, wheezing, rales, and rhonci were absent from her respiratory system, she was well hydrated and in no acute distress, insight, and memory were found to be intact, with no depression or anxiety noted. (Tr. 167, 189.)

1. Plaintiff's Back Pain.

Plaintiff complains that the ALJ did not properly consider Dr. Panchal or Dr. Patel's findings regarding her back pain, however this argument is without merit as the ALJ's decision expressly acknowledges the facet injections given by Dr. Panchal (Tr. 14) and the treatment received by Dr. Patel (Tr. 14, 20). Another MRI of Plaintiff's spine in January 2006, revealed

16

no focal disc herniation or foraminial compromise, with only mild facet hypertrophy at L5-S1. (Tr. 14, 194.) Thus, these findings by the ALJ in addition to those described above which question the extent of Plaintiff's subjective complaints regarding her back pain, are supported by substantial evidence.

### 2. Plaintiff's COPD.

The ALJ also found Plaintiff's claims regarding her COPD condition were not credible. (Tr. 19.) The ALJ acknowledged that Plaintiff was treated in 2002 and 2003 (prior to the relevant time frame) for asthma and rhonchi, for which she received medication. After that however, Plaintiff's examinations generally found her respiratory system normal. In addition to the evaluations already cited to herein, Plaintiff respiratory and chest pain were reported as normal during most of her visits to Abinales and Abinales from September 2005, to February 2007. (Tr. 291-300, 307, 311-314.) Finally, Plaintiff's one-pack a day smoking habit undermines the severity of her COPD. *See Holley v. Chater*, 931 F. Supp. 840, 847-48 (S.D. Fla. 1996) ("the continued use of cigarettes by plaintiff suggests that his pulmonary condition is not as severe as he alleges and further supports the ALJ's decision to accord [plaintiff's] subjective complaints diminished weight"). Thus, the ALJ's findings regarding the extent of Plaintiff's alleged COPD are supported by substantial evidence.

### 3. Plaintiff's Headaches.

Next, Plaintiff challenges the ALJ's determination that her headaches were not disabling. The Court finds that substantial evidence supports the ALJ's finding. While Plaintiff reported headaches and received medication for her migraines, the ALJ noted that there was no indication Plaintiff had to lay down in a quiet dark room, or was sensitive to light during her

17

migraine attacks. (Tr. 19.) Additionally, Plaintiff's MRI of her brain was normal. (Tr. 159.) The undersigned also notes that Plaintiff's attention and concentration were also found to be adequate during her many physical and psychological evaluations as discussed herein. Finally, the record also reflects that at least on two occasions Plaintiff denied headaches or dizzy spells in 2007, and the ALJ noted that Plaintiff did engage in basic mental and physical work activities in 2004, which would be inconsistent with an individual who is totally disabled. (Tr. 13, 178, 246.) Thus, there is substantial evidence on the record to discount the severity of Plaintiff's alleged headaches.

    4.    Plaintiff's Obesity.

Finally, Plaintiff argues that the ALJ erred in failing to apply Social Security Ruling 02-1P in his determination by not considering the effects of Plaintiff's obesity on her underlying impairments. SSR 02-1p provides that while obesity is no longer a listed impairment, its effects and its combined effects with other impairments should be considered when evaluating disability. Contrary to Plaintiff's assertions, the ALJ acknowledged Plaintiff's obesity but found that the record showed Plaintiff's range of motion was unrestricted, her heart and lung examinations were within normal limits, and Plaintiff ambulated normally. (Tr. 19.) The Court finds that the ALJ's assessment of Plaintiff's obesity is supported by substantial evidence.

The principle that, under the substantial evidence test, findings of fact may be reversed only when the record compels a reversal equally applies to credibility determinations. Here, the record does not compel a reversal as to the ALJ's credibility determination of Plaintiff. The ALJ properly articulated his reasons for discounting Plaintiff's subjective complaints of pain and other symptoms. Moreover, the ALJ did not overlook certain evidence as claimed by the Plaintiff. In

18

conclusion, the Court finds that Plaintiff has not established that the ALJ erred in his analysis of Plaintiff's subjective complaints.

### E. The Commissioner Should Consider Plaintiff's Alleged Impairments Individually and In Combination Upon Remand.

The ALJ must consider the combined effects of all impairments in evaluating disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (*quoting Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) ("it is the duty of the . . . [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled"). The Court need not determine whether the ALJ properly considered each and every impairment and the combined effect of those impairments in light of the Court's finding that the ALJ failed to consider the side effects of Plaintiff's medications. Upon remand the Commissioner should take care to consider Plaintiff's alleged impairments individually and in combination. The ALJ should make "specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Heckler*, 748 F.2d at 635; *see also Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (remanding because the ALJ's broad statement that he considered plaintiff's combined impairments does not reveal how he evaluated the effect plaintiff's impairments may have on her ability to obtain proper treatment).

**IV.**

For the foregoing reasons, it is RECOMMENDED:

1. That the ALJ's decision be reversed and the case be remanded for further administrative action consistent with this report and recommendation.

2. The Clerk of Court be directed to enter judgment for Plaintiff.

**IT IS SO REPORTED** at Tampa, Florida this 23rd day of February, 2010.

ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

**Copies furnished to:**
Honorable Elizabeth A. Kovachevich
Counsel of Record